**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHAEL C. WARD,

                Petitioner,         Case No. 2:19-cv-12543
                                        Hon. Arthur J. Tarnow

v.

WILLIS CHAPMAN,[1]

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITIONER'S MOTIONS FOR RECONSIDERATION (ECF NOS. 40, 41), GRANTING MOTIONS TO SUPPLEMENT (ECF NO. 46, 48) AND EXTEND DEADLINE (ECF NO. 43), DENYING MOTIONS FOR A CONFERENCE (ECF NO. 49) AND FOR APPOINTMENT OF APPELLATE COUNSEL (ECF NO. 50), AND DENYING CERTIFICATE OF APPEALABILITY

On August 26, 2019, Michigan prisoner Michael C. Ward filed a petition for writ of habeas corpus challenging the Michigan Parole Board's denial of parole on the life sentence he is serving for a 1981 drug possession conviction. Mich. Comp. Laws § 333.7401(2)(a)(1). Two of Petitioner's grounds for relief were dismissed. ECF No. 21. Respondent was ordered to respond to the remaining claim: that Petitioner was denied parole in retaliation for his continued litigation in *Ward v. Wolfenbarger*, Case No. 03-

---

[1] The Court amends the caption to reflect the name of Petitioner's current warden. See Rule 2(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

*Ward v. Chapman*, 19-12543

72701, which challenged the Michigan Department of Corrections' continued use of expunged convictions in security classification and parole board decisions.

Petitioner filed this separate petition for a writ of habeas corpus following the Court's suggestion in Petitioner's 2003 habeas case, most recently in an August 2019 order. Case No. 03-72701, ECF No. 355. Petitioner's continued incarceration on a now-obsolete statutory life term for a non-violent offense serves no purpose and does not enhance the public safety of Michigan – especially as he will be 71 years of age when next eligible for parole review. Nonetheless, Petitioner is unable to demonstrate his entitlement to habeas relief.

On June 22, 2020, the Court dismissed with prejudice Petitioner's application for a writ of habeas corpus. ECF No. 30. The Court also denied several pending motions, including Petitioner's motion for bond. *Id*. Petitioner has filed duplicate motions for reconsideration of that order and relief from judgment. ECF No. 40, 41.

Petitioner has experienced significant mail and docketing delays over the last few months due to circumstances related to the COVID-19 pandemic. For instance, Petitioner filed a timely reply brief to Respondent's answer to Petitioner's motion for bond, under Local Rule 7.1(e)(1)(C), but it

*Ward v. Chapman*, 19-12543

was not received and docketed until June 22, 2020. ECF No. 32. Similarly, a timely reply brief to Respondent's answer to Petitioner's habeas petition was not received and docketed until June 23, 2020. ECF No. 33.

Petitioner also filed a "comprehensive" reply brief opposing Respondent's answer to his second habeas claim. ECF No. 37. That pleading was signed June 8, 2020, postmarked June 25, 2020, *id*. at PageID.56, and docketed July 7, 2020. A supporting volume of exhibits was received and docketed separately as ECF No. 36. Petitioner has also submitted supplemental authority, ECF No. 35; and two letters and a notice relating to the delayed pleadings. ECF Nos. 34, 38, 39.

More recently, the Petitioner has filed a Notice of Appeal, ECF No. 44, which he requested be held in abeyance pending this order; letters, ECF Nos. 42, 47; a "Motion-Addendum/Supplement of Authority," ECF No. 46, which expands upon but largely duplicates his argument in ECF No. 35; and a motion for extension of time to file for a certificate of appealability and *in forma pauperis* status, and for reconsideration of the Court's denial of appointment of counsel. ECF No. 43. He also filed a motion requesting a conference and for appointment of appellate counsel. ECF Nos. 49, 50.

Now having reviewed all outstanding motions and exhibits, the Court will deny Petitioner's motion for reconsideration. While Petitioner is correct

*Ward v. Chapman*, 19-12543

that AEDPA deference does not apply to his case, and his petition must be reviewed *de novo*, the correction of that error does not result in a different outcome. L.R. 7.1(h)(3). This is also true of other errors Petitioner claims. An explanation follows.

## I.   Background and procedural history

Petitioner has litigated since 2003 a habeas challenge to the institutional use of two invalid 1971 criminal convictions by the Michigan Department of Corrections and the Michigan Parole Board. *See* Case No. 03-72701. Petitioner is serving a life sentence for a 1981 conviction for possession with intent to deliver over 650 grams of cocaine. This petition argues the 1971 convictions were unconstitutionally used over several years, from 2005 parole violation charges and subsequent denials of parole up through the parole board's most recent finding of "no interest" in April 2017 and its recommendation against executive clemency in 2018. In addition to those claims, Petitioner argues that the parole board's motivation for its denials is retaliation for his continued litigation in the 2003 case, in violation of his First Amendment rights. He raised a third claim that his continued incarceration is cruel and unusual punishment in violation of Eighth Amendment protections.

*Ward v. Chapman*, 19-12543

In its June 22, 2020, order, this Court denied Petitioner's motion for bond and dismissed the surviving claim of retaliation (the two other claims had been dismissed in a previous order). ECF No. 30. At the time the Court's most recent order was entered, neither of Petitioner's reply briefs had been received.

In his motion for reconsideration, Petitioner cites as error the Court's application of AEDPA deference to his case, which he argues is inapposite because the parole board decision is not a "state court judgment." Petitioner also argues in the motion and through supplemental authority filings that he possesses an enduring liberty interest because he was at one time granted parole. He claims that his petition is based not 28 U.S.C. § 2254, but on 28 U.S.C. § 2241, resulting in a different standard for relief. Petitioner argues that the Court's failure to wait for his reply briefs before issuing its recent orders is a due process violation. Finally, Petitioner asserts that he is entitled to an evidentiary hearing that will demonstrate he is entitled to habeas relief.

## II.    Standard of Review

### A. AEDPA

In general, habeas petitions are reviewed under the exacting standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Under

5

*Ward v. Chapman*, 19-12543

AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state court proceeding unless the state adjudication of the claim either

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

However, if the state court did not adjudicate a claim on the merits, "the deferential standard of review mandated by the AEDPA does not apply." *Higgins v. Renico*, 470 F.3d 624, 630–31 (6th Cir. 2006). Instead, the claim is reviewed *de novo*. *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct., 1401; *Robinson v. Howes*, 663 F.3d 819, 822–23 (6th Cir. 2011)).

*Cullen* also held that a federal court reviewing a habeas petition under § 2254(d) is restricted to the record before it, when the state court ruled on the merits. *Williams v. Lafler*, 494 F. App'x 526, 534 (6th Cir. 2012) (citing *Cullen*, 131 S. Ct. at 1398-99). However, when *de novo* review applies, the court is "free to expand the record, provided that the petitioner diligently

6

*Ward v. Chapman*, 19-12543

attempted to present those facts in state court . . ." *Stermer v. Warren*, 959

F.3d 704, 721–22 (6th Cir. 2020) (citing *Williams v. Taylor*, 529 U.S. 420,

431–32 (2000); *Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013))

(other citations omitted). Even when a petitioner has been diligent, the

decision to hold "an evidentiary hearing is discretionary." *Williams v. Lafler*,

494 F. App'x at 534. In determining whether a hearing is appropriate, "the

district court must consider whether the hearing could enable the petitioner

to prove factual allegations which, if true, would entitle him or her to federal

habeas relief." *Id*. (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "'[I]f

the record refutes the applicant's factual allegations or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing.'"

*Id*. (citing *Schriro*, 550 U.S. at 474.)

## B. Motions for reconsideration and/or relief from judgment

Petitioner brings his motion under both federal and local rules. Motions

for reconsideration are governed by Local Rule 7.1 of the Eastern District of

Michigan. *Hence v. Smith*, 49 F. Supp. 2d 547, 550 (E.D. Mich. 1999). A

motion for reconsideration should be granted if the movant demonstrates a

palpable defect by which the court and the parties have been misled and that

a different disposition of the case must result from a correction thereof. *Ward*

*v. Wolfenbarger*, 340 F. Supp. 2d, 773, 774 (E.D. Mich. 2004); *Hence*, 49 F.

*Ward v. Chapman*, 19-12543 Supp. 2d at 550-51 (citing L.R. 7.1(g)(3)). A motion for reconsideration which merely presents "the same issues ruled upon by the Court, either expressly or by reasonable implication," shall be denied. *Ward*, 340 F. Supp. 2d at 774.

A party seeking to amend or alter a judgment under Rule 59(e) must show one of four things: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

Relief under Rule 60(b)(1) is available "in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (citing *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000)). When the movant's argument is based on "strictly legal error," Rule 60(b)(1) controls, and 60(b)(6) is inapplicable "absent extraordinary circumstances." *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998) (quoting *Hopper v. Euclid Manor Nursing Home*, Inc., 867 F.2d 291, 294 (6th Cir. 1989)).

*Ward v. Chapman*, 19-12543

A request for relief under Rule 60(b)(3) requires a movant "to show by clear and convincing evidence that the district court's judgment was obtained by fraud or misconduct." *Crehore v. United States*, 253 F. App'x 547, 549 (6th Cir. 2007) (citation omitted). Rule 60(b)(3) requires the moving party to "'show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question.'" *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 455 (6th Cir. 2008).[2]

Relief is available under Rule 60(b)(6) "only in exceptional and extraordinary circumstances, which are defined as those unusual and extreme situations where principles of equity mandate relief." *Michigan Dep't of Envtl. Quality v. City of Flint*, 296 F. Supp. 3d 842, 846 (E.D. Mich. 2017) (citing *Export–Import Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 247 (6th Cir. 2010)) (internal quotation marks omitted). Rule 60(b)(6) also requires showing "something more than one of the grounds in subsections (1) through (5)." *Id.* (citing *East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011)). A district court should grant

---

[2] Because Petitioner cites no specific examples of fraud or misrepresentation, only his "belief" and an assertion that an evidentiary hearing "could" demonstrate such misconduct by Respondent, *see* ECF No. 40, PageID.1469-70, the Court will not entertain Rule 60(b)(3) as grounds for relief from judgment.

*Ward v. Chapman*, 19-12543

relief from operation of a judgment under Rule 60(b)(6) when it determines in its sound discretion that substantial justice would be served. *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir.1985).

Finally, as with a Rule 59(e) motion (and L.R. 7.1), a party may not use Rule 60(b) "as an occasion to relitigate its case." *Mich. D.E.Q.*, 296 F. Supp. 3d at 846 (citation omitted).

### III.   Discussion

### A. AEDPA deference does not apply

Petitioner is correct that his petition was incorrectly reviewed under the standard of 28 U.S.C. § 2254(d). When a "state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001)).

Decisions by the parole board are not state court judgments. *See Dyer v. Morrow*, 499 F. App'x 505, 510 (6th Cir. 2012) ("The proceedings of the parole board do not constitute a state court decision on the merits."). Because Petitioner's claim was never "adjudicated on the merits" by a state court, the proper standard of review is "*de novo* as it would be on direct appeal." *Stermer v. Warren*, 959 F.3d 704, 721–22 (6th Cir. 2020) (citing *Maples*, 340 F.3d at 436. (6th Cir. 2003).

*Ward v. Chapman*, 19-12543

Petitioner is correct that the Court applied the wrong standard of review. However, as explained further below, he is unable to demonstrate that "a different disposition of the case" will result from the correction of that error. L.R. 7.1.

## B. Petitioner's due process claim

Petitioner argues the Court's failure to wait for his reply briefs before issuing its orders violated his right to due process. The Court has now reviewed Petitioner's replies, exhibits, supplemental authority, and other pleadings. While "'due process' has never been, and perhaps can never be, precisely defined[,]" *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N. C.*, 452 U.S. 18, 24 (1981), the Court recognizes that Petitioner is entitled to be heard. *Davis v. Lane*, 814 F.2d 397, 402 (7th Cir. 1987). The Court's consideration of Petitioner's outstanding filings corrects any violation of his due process rights by the omission.

## C. Petitioner does not retain a liberty interest in parole

Petitioner's theory, that an inmate once granted parole obtains an enduring liberty interest which survives parole revocation and a return to prison, lacks merit. Petitioner raised this argument for the first time in his June 23, 2020, motion to supplement authority in support of his reply brief. ECF No. 35. He claims that his release on parole in 2004 established a liberty

*Ward v. Chapman*, 19-12543

interest that was not extinguished by his parole revocation in 2006. Petitioner expands on that argument in his motion for reconsideration and in a second motion for supplemental authority. ECF Nos. 40, 46.

The Sixth Circuit holds that arguments raised for the first time in a reply brief are generally not permitted. *Bennett v. Bascom*, 788 F. App'x 318, 323–24 (6th Cir. 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). The rationale for this rule is that "[r]eply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." *Id*. (quoting *Scottsdale Ins. Co*., 513 F.3d at 553) (emphasis in original). On the basis of fairness, because "the non-moving party ordinarily has no right to respond to the reply brief," the court treats such new issues as waived. *Id*.

As to the theory's inclusion in the motion for reconsideration, the Court notes that neither Rule 59(e) and 60(b) permit relief or amendment of a judgment or order on the basis of a new legal theory. "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014). Similarly, litigants cannot seek relief under Rule 59(e) by raising "new legal arguments that could have

*Ward v. Chapman*, 19-12543

been raised before a judgment was issued." *Mich. D.E.Q.*, 296 F. Supp. 3d

at 846 (citing *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d

383, 395 (6th Cir. 2007)).

More important than the procedural barriers is the fact that Petitioner's

theory is without support. Petitioner seeks to overcome the distinctions in

due process protections between granting parole to a prisoner and revoking

it as to a parolee. However, the Supreme Court has clearly established that

"parole release and parole revocation are quite different." *Greenholtz v.*

*Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 9 (1979). "There

is a crucial distinction between being deprived of a liberty one has, as in

parole, and being denied a conditional liberty that one desires." *Id*.

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Court held that a

parole-revocation determination must meet certain due process standards.

This is so because "[r]evocation deprives an individual, not of the absolute

liberty to which every citizen is entitled, but only of the conditional liberty

properly dependent on observance of special parole restrictions." *Id*. at 480.

Despite the "conditional" limitation, the "termination [of parole] inflicts a

'grievous loss' on the parolee" and therefore, some process is due. *Id*. at 482.

This is the result of the relatively unrestricted status of the parolee to "be

gainfully employed and . . . free to be with family and friends and to form the

*Ward v. Chapman*, 19-12543

other enduring attachments of normal life." *Greenholtz*, 442 U.S. at 9 (citing *Morrissey*, 408 U.S. at 482).

*Greenholtz* contrasted the confined condition of those awaiting parole release with the parolees' status of being at liberty. 442 U.S. at 9. The prisoner's hope of obtaining a parole release is a "general interest . . . no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process." *Id*. at 11 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976)).

The *Greenholtz* Court also differentiated the decisions that must be made in each setting. 442 U.S. at 11. Parole revocation starts with a "wholly retrospective factual question" as to "whether the parolee in fact acted in violation of one or more conditions of parole," then asks "whether the parolee should be recommitted either for his or society's benefit." *Id*. (citing *Morrissey*, 408 U.S. at 479-80).

Parole release decision processes are much more complex and "subtle and depend[] on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience . . ." *Id*. at 9. These decisions may "involve[] no more than informed predictions" and may "turn[] on a 'discretionary assessment of

14

*Ward v. Chapman*, 19-12543

a multiplicity of imponderables . . .'" *Id*. at 10 (citing *Meachum*, 427 U.S. at 225) (other citation omitted).

Following *Greenholtz* and *Morrissey*, Petitioner is correct that a liberty interest is triggered when an inmate is released on parole. His theory fails with his inferential leap that once established, the liberty interest survives parole revocation and the parolee's return to the status of incarcerated prisoner. The Court has found no case law in support of that argument.

A Supreme Court decision applying *Morrissey* to an Oklahoma prison-crowding relief process called "preparole" demonstrates that being *at* liberty is what vests the liberty interest in the parolee but not the prisoner. Again, the Court noted that the parolee's circumstances are "very different from . . . confinement in a prison." *Young v. Harper*, 520 U.S. 143, 147–48 (1997) (citing *Morrissey*, 408 U.S. at 482). In *Young*, the "preparolee" enjoyed a liberty interest because while subject to constraints similar to parolees, he lived and worked in the outside world enjoying "a life generally free of the incidents of imprisonment." *Id*. at 152-53. "[T]he point at which the constitutionally-created liberty interest arose . . . . is the fact of release from incarceration." *Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005) (citing *Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995)). *Accord*, *Hurd v. D.C., Gov't*, 864 F.3d 671, 682-83 (D.C. Cir. 2017) (associating "a

*Ward v. Chapman*, 19-12543

procedurally protected liberty interest" with "living openly in society for years[,]" "the absence of physical restraint[,]" and "free[dom] of physical confinement[.]")

Cases to the contrary on which Petitioner relies are distinguishable or inapplicable. *Sneed v. Donahue*, 993 F.2d 1239 (6th Cir. 1993), addressed whether the petitioner's due process rights were violated "when his parole was automatically revoked without a final hearing pursuant to" Kentucky state law. *Id*. at 1241 (citing *Moss v. Patterson*, 555 F.2d 137, 138 (6th Cir. 1977) (per curiam)). *In re Parole of Hill*, 298 Mich. App. 404, 827 N.W.2d 407 (2012), the Michigan Supreme Court found that because "he remained an inmate, 'confined and thus subject to all of the necessary restraints that inhere in a prison[,]'" Hill had no liberty interest to support a challenge to the parole board's rescission of his parole grant before his release. 298 Mich. App. at 419 (citing *Greenholtz*, 442 U.S. at 9). Petitioner's other cited authority includes the dissents in *Jago v. Van Curen*, 454 U.S. 14, 24-25 (1981) (Stevens, J., dissenting), and *Crump v. Lafler*, 657 F.3d 393 (6th Cir. 2011) (Cole, J., dissenting), which carry no precedential value.

And the few courts to consider this issue directly have found no liberty interest on the part of inmates in Petitioner's position; that is, who were paroled, returned to prison following parole revocation, and waited again for

*Ward v. Chapman*, 19-12543

parole release. *See Witherow v. Palmer*, No. 306CV00259HDMVPC, 2007 WL 9771343, at *2 (D. Nev. May 15, 2007), *aff'd*, 276 F. App'x 649 (9th Cir. 2008) (inmate seeking parole again after an earlier grant was revoked had no protected liberty interest to support a challenge to parole board denials); *Manns v. Sampson*, No. 1:07-CV-383, 2007 WL 3094900, at *5 (W.D. Mich. Sept. 13, 2007), *report and recommendation adopted*, No. 07-CV-383 (W.D. Mich. Oct. 19, 2007) (unpublished judgment) (Plaintiff "had no liberty interest in being released on parole after his parole was revoked.")

### D. Possessing no liberty interest, Petitioner is not entitled to relief

Because Petitioner's theory that an inmate retains a liberty interest even after parole is revoked is meritless, Petitioner does not have a liberty interest protected by due process. Without that liberty interest, Petitioner cannot demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. §§ 2241(c)(3), 2254(a), for arbitrary and capricious or retaliatory decisions by the Michigan Parole Board.

"When an inmate asserts a right to parole premised upon substantive due process, as here, the claim involves a purported liberty interest." *Bell v. Anderson*, 301 F. App'x 459, 461 (6th Cir. 2008) (per curiam) (citing *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth*., 929 F.2d 233, 235 (6th

*Ward v. Chapman*, 19-12543

Cir.1991)). As explained in the Court's order dismissing the petition, ECF No. 30, the Sixth Circuit has generally rejected decisions by other circuits which found due process violated by "'totally arbitrary parole decisions' even in the absence of an identifiable liberty interest in parole release." *Bell*, 301 F. App'x at 461–62 (citing *Burkett v. Love*, 89 F.3d 135, 139-40 (3d Cir. 1996); *Thompson v. Armontrout*, 808 F.2d 28, 31 (8th Cir. 1986); *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)). Only parole board's actions or decisions that "shock the conscience" may violate due process. *Id*. at 461, 463 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)). *See*, *e.g.*, *Sturgis v. Michigan Parole Bd.*, No. 18-1554, 2019 WL 2156429, at *1 (6th Cir. Feb. 1, 2019) (unpublished) ("Sturgis's allegations that he was denied parole based on a 'false narrative'—including allegedly false information that he had a violent criminal history and 'blamed victims'—are insufficient to 'shock[ ] the conscience.'") (citing *Bell*, 301 F. App'x at 461, 463).

Even under *de novo* review, instead of the AEDPA deference which the Court applied in error in its earlier order, Petitioner cannot demonstrate that he is entitled to relief. Granted, the Court also observed in its previous order that the Michigan Parole Board's continued denial of parole to Petitioner "borders on" and "strikes" the Court as arbitrary and capricious. However, the Court also stated that even if the decisions were arbitrary and

*Ward v. Chapman*, 19-12543

capricious, they do not "shock the conscience." Petitioner has provided no basis for the Court to find otherwise.

An affidavit by the most recent reviewer of Petitioner's case for parole cited the circumstances of his parole violation in 2004 as well as three more recent major misconduct tickets in prison as the basis for his "no interest" recommendation. Aff. E. Heap, ECF No. 24-3. While Petitioner would not have served sixteen years for the misdemeanors with which he was originally charged, he did exhibit very bad judgment. As discussed in more detail below, Petitioner attempts to discredit the board members' affidavits. However, as Petitioner argues, affidavits do present competent evidence. *See* ECF No. 33, PageID.622 (citing, e.g., *Independent Petro. Corp. v. Aetna Cas. & Sur. Co.*, 654 F. Supp 1334 (D.D.C. 1986); *Valesquez-Garcia v. Horizon Lines of Puerto Rico*, 473 F.3d 11 (1st Cir. 2007)).

The parole board is charged with a decision-making process that *Greenholtz* characterized as complex, "subtle[,] . . . purely subjective[,] and even a "discretionary assessment of a multiplicity of imponderables . . ." 442 U.S. at 9-10 (citations omitted). On Petitioner's record, and under *Bell v. Anderson*, the board's recommendation against parole is not completely without justification and therefore does not "shock the conscience."

19

*Ward v. Chapman*, 19-12543

### E. Retaliatory motive for parole denial

In his replies and related exhibits, Petitioner has provided the Court with a bountiful record in support of his claims. However ample, Petitioner's exhibits do not demonstrate the Court erred in its original ruling rejecting his claim of vindictive retaliation in violation of his First Amendment rights.

Petitioner's claim of retaliatory motivation for protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). *Thaddeus-X* provides the standard, explaining

> [t]he analysis of motive in retaliation claims is well-developed. Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail . . .

*Id*. at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). The plaintiffs in *Thaddeus-X* provided "a number of specific, nonconclusory allegations and identified affirmative evidence that could support a jury verdict at trial." *Id*. at 399–400.

A retaliation claim has three elements: (1) engagement in protected conduct; (2) an adverse action taken that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, that is, the adverse action was

20

*Ward v. Chapman*, 19-12543

motivated, at least in part, by the protected conduct. *Id*. at 394. The petitioner bears the burden of proof on all three elements, and "must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037, 1038 (6th Cir. 2001) (citing *Mt. Healthy*, 429 U.S. at 287).

Here, Petitioner has indisputably engaged in protected conduct, by litigating the *Ward v. Wolfenbarger* case. To establish adverse actions "that would deter a person of ordinary conduct," Petitioner has advanced a lengthy litany of retaliatory acts, including, for example, unwarranted misconduct charges, prejudicial transfers between correctional facilities, placement in segregation without cause, and the loss and damage of his legal materials. *See*, *e.g.*, Reply, ECF No. 33-2, PageID.766-71; *see generally id*., PageID.759-805. However, the actions Petitioner describes were taken by corrections staff at various MDOC facilities, not members of the parole board. As such, they are not the subject of the habeas petition before the Court, nor do these actions serve to demonstrate retaliatory motivation on the board's part.

Petitioner does allege that individual MDOC staff members speculated that his continued litigation was the reason he had not been paroled. And Petitioner asserts that a prison counselor told him that he had received a call

21

*Ward v. Chapman*, 19-12543

from an unnamed parole board member who was very angry with Petitioner and instructed the counselor he should try to "curb" Petitioner's litigation. ECF No. 33-2, PageID.773.

These speculative and uncorroborated assertions do not demonstrate a causal connection between Petitioner's litigation and the parole board's decisions sufficient to demonstrate a retaliatory motive. Nor do Petitioner's attempts to establish temporal proximity. In his petition, he states that after the Sixth Circuit's ruling in his favor in 2009, "the Parole B[oar]d became more aggressive in denying parole"; and following its July 14, 2014 ruling, "the parole authorities began instructing MDOC staff to retaliate in various forms . . ." Pet., ECF No. 1, PageID.9-10. Parole denials in 2007, 2012, and 2017 do not correspond temporally to the Sixth Circuit's orders. *See Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004) (citations omitted) ("Without more, . . . conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive.").

Even if Petitioner met his burden, Respondent has as well, presuming the burden-shifting convention applicable to civil rights litigation applies as well to habeas petitions. *See Thaddeus-X*, 175 F.3d at 399. Respondent has provided affidavits by parole board members explaining their decision-making process. Board member Heap avers that his decisions have been

22

*Ward v. Chapman*, 19-12543

based on Petitioner's behavior that resulted in the revocation of his parole in 2006 and in misconduct tickets since then. Aff., E. Heap, ECF No. 24-3. Affiant Eagen states that parole board members are generally unaware of prisoner litigation. Aff., M. Eagen, ECF No. 24-4. The affidavits demonstrate that the board's motivation for its decisions is not animus, but Petitioner's behavior inside and outside of prison.

It is difficult to believe that the Michigan Parole Board members were completely unaware of Petitioner's litigation. Regardless, the Court has reviewed Petitioner's affidavits and those provided by Respondent, as well as the remainder of the record in Case No. 19-12543, and pertinent portions of Case No. 03-72701. Applying *de novo* review, the Court concludes that the parole board would have made the same decisions regardless of Petitioner's litigation, the protected activity in question. Petitioner has not demonstrated that the Michigan Parole Board has retaliated against him in violation of his First Amendment rights.

## F. Use of the 1971 convictions in Parole Board decisions

Petitioner also asserts the Court erred in dismissing his first claim, the unconstitutional use of the 1971 convictions in the Parole Board's decisions from 2006 forward. In his most recent motion for reconsideration, Petitioner

*Ward v. Chapman*, 19-12543

insists that because the Court ruled in 2004 that those convictions were improperly used, that it must so rule again.

The law-of-the-case doctrine Petitioner cites generally provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (citation omitted). The Supreme Court noted that law of the case doctrine is not meant to limit the Court's power. *Id*. Petitioner's request is not based on the Court's 2004 findings of law, but on its factual findings. In view of the intervening facts and circumstances of sixteen years following that ruling, the Court's holding in 2004 does not dictate the outcome here.

The Court takes Petitioner's point that *if* his 2006 parole revocation was solely or primarily the result of the unconstitutional use of his 1971 convictions, and *if* that parole revocation continued to be the basis for repeated denials of parole, the later denials themselves would be unconstitutional. However, this question has already been resolved against Petitioner. Both this Court and the Sixth Circuit reviewed the circumstances of the parole revocation and held that the 1971 convictions were not improperly applied. The Sixth Circuit expressly found that

*Ward v. Chapman*, 19-12543

> [a]lthough Ward submits Department of Corrections documents that reference the 1971 convictions, we have no evidence of any adverse consequences, direct or collateral, as a result of the persistent notation of the 1971 convictions on certain forms. To the contrary, Ward's parole was revoked because of his "no contest plea" [to parole violation charges] and *not because the Parole Board looked anew at the 1971 expunged convictions.*

*Ward v. Wolfenbarger*, 342 F. App'x 134, 137 (6th Cir. 2009) (emphasis added). Petitioner cannot with this petition reopen the question of the board's motivation for its revocation decision over ten years after the Sixth Circuit directly decided the issue.

Petitioner further argues that by providing the Court with documents reflecting the 1971 convictions, he has demonstrated that the parole board continues to use the convictions to deny him parole and to recommend against executive clemency. Petitioner cites *Gall v. Scroggy*, 603 F.3d 346 (6th Cir. 2010), as "controlling law" that requires a reversal, because *Gall* held that collateral consequences of unconstitutional convictions are presumed. *Id*. at 354 (citing *Gentry v. Deuth*, 456 F.3d 687, 694-95 (6th Cir. 2006)).

The "presumption" of *Gall* and *Gentry* refers to the "legion, and patently obvious" legal disqualification of felons from "certain rights and privileges [,]" such as voting, possessing firearms, and serving on juries or in public office. *Gentry*, 456 F.3d at 694, 695. This presumption of the consequences

25

*Ward v. Chapman*, 19-12543

recognized the operation of law causing injury for the purposes of standing. *Id*.; *see also Gall*, 69 F. App'x at 253 (presence of collateral consequences determined the existence of a case or controversy); *Spencer v. Kemna*, 523 U.S. 1, 12 (1998). What these cases do not establish is a factual presumption in an individual petitioner's case.

However, even if it did, *Gall* shifts the burden to the state to demonstrate that the anticipated consequences have not occurred, 69 F. App'x at 253, and the state has met that burden. Respondent relies on the affidavit of the most recent parole board member who reviewed Petitioner's case, Edwin Heap. Heap avers that he did not consider the expunged convictions (or the "B" prefix that resulted from them), and Petitioner's criminal history was not a "significant factor" in Heap's recommendation to the rest of the board that it take no interest in Petitioner's parole. Aff., E. Heap, ECF No. 24-3, PageID.406. Instead, what Heap found most significant were Petitioner's parole violations and misconduct tickets. *Id*. at 405, 406.

In the Sixth Circuit's 2009 ruling in Petitioner's appeal in Case No. 03-72701, the court also found that the 1971 convictions were not applied to parole decisions:

> In later assessing Ward's enforcement motion—brought after Ward had been granted parole and later rearrested—the court was not convinced that the State was still impermissibly

*Ward v. Chapman*, 19-12543

considering the now-expunged convictions. And we agree with the district court that Ward offered "nothing other than speculation" that the Parole Board was taking into account the vacated 1971 convictions in a way that would prejudice his shot at parole.

*Ward*, 342 F. App'x 134, 137. That continues to be the case.

The continued presence of the expunged convictions in Petitioner's records, after repeated orders by this Court, is problematic. But Petitioner has still offered no more than the implausible speculation that the Michigan Parole Board continues to use those convictions to his detriment in its decisions on whether to grant parole or recommend clemency. Petitioner is not entitled to habeas relief on this issue.

### G. Evidentiary hearing and discovery

Petitioner repeatedly states that an evidentiary hearing and/or discovery will reveal the parole board's bias and retaliatory motive. Whether to grant an evidentiary hearing is left to the district court's sound discretion. *Robinson v. Howes*, 663 F.3d 819, 824 (6th Cir. 2011) (citing *Schriro*, 550 U.S. at 473). In deciding whether a hearing is appropriate, "the district court must consider whether the hearing could enable the petitioner to prove factual allegations which, if true, would entitle him or her to federal habeas relief." *Williams v. Lafler*, 494 F. App'x 526, 534 (6th Cir. 2012) (citing *Schriro*, 550 U.S. at 474). "'[I]f the record refutes the applicant's factual allegations or

*Ward v. Chapman*, 19-12543

otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'" *Id*. (citing Schriro, 550 U.S. at 474.)

Similarly, whether to grant discovery under Rule 6 of the rules governing § 2254 is within the discretion of the habeas court, and a grant requires "a fact specific showing of good cause" by the petitioner. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) (citing *Bracy v. Gramley*, 520 U.S. 899 (1997); *Byrd v. Collins*, 209 F.3d 486, 515–16 (6th Cir. 2000)). "[A] court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (citing *Bracy*, 520 U.S. 899, 908–09). "The burden of demonstrating the materiality of the information requested [by the discovery motion] is on the moving party." *Stanford*, 266 F.3d at 460. In *Cornwell v. Bradshaw*, 559 F.3d 398 (6th Cir. 2009), the Sixth Circuit found it was not an abuse of discretion to deny a motion for an expert, "because the facts, if fully developed, would not have led the district court to believe that federal habeas relief was appropriate." *Id*. at 410.

The Sixth Circuit has stated that it "will not find that a district court erred by denying a fishing expedition masquerading as discovery." *Id*.; *see also*

*Ward v. Chapman*, 19-12543

*Williams v. Bagley*, 380 F.3d at 974 (citing *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir.1997)) ("Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'") For instance, where a petitioner only offered "conjecture," but no "intrinsic or extrinsic . . . evidence [of] corruption or actual bias . . . . the district court did not abuse its discretion in denying [the petitioner] a forum to question [witnesses] to explore his unsupported speculation of improper communications . . . " *Getsy v. Mitchell*, 495 F.3d 295, 311–12 (6th Cir. 2007) (citing *Bracy*, 520 U.S. at 909; *Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000) ("affirming the district court's denial of an evidentiary hearing regarding the petitioner's allegations of a secret deal between the prosecutor and a trial witness where such a hearing would have been 'tantamount to an impermissible fishing expedition'")).

### 1. Discovery

First, Petitioner's demands for discovery correspond to the fishing expeditions described above. Instead of specific allegations of actual bias, Petitioner speculates that considering his positive prison record, the time he has served, the non-predatory and "technical" nature of his parole violation, and his own "history of aggressively challenging those state agencies and agents," the only plausible reason he has been denied parole is personal

*Ward v. Chapman*, 19-12543

animus on the part of parole board members and vindictive retaliation. *See*

ECF No. 33, 649-63, 658-59.

This conjecture does not meet the "good cause" requirement to grant

discovery. *See Getsy*, 495 F.3d 311-12; *Rector*, 120 F.3d at 562). Petitioner

also alleges board members did not read his file and otherwise did not follow

state law. *See* ECF No. 33, PageID.651-52; ECF No. 33-4, PageID.924.

Failure to comply with state law and procedures is non-cognizable in habeas.

*Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) (citations omitted).

Instead of providing specific allegations that would give the Court

reason to believe that development of a factual record would demonstrate

his entitlement to relief, *Williams*, 380 F.3d at 974, Petitioner only asserts his

right to obtain discovery. Otherwise, he appears more interested in personal

attacks on parole board members and deploying discovery or an evidentiary

hearing in furtherance of that effort. For instance, Petitioner asserts that

parole board member Heap is incompetent and incapable of performing his

job impartially, ECF No. 33, PageID.658-59. Heap's testimony and that of

psychiatric experts would reveal what he knew consciously and

subconsciously and would demonstrate a "mental condition" which includes

"personal animus with subconscious vindictive retaliatory motive." *Id*. at 655-

57. Petitioner's demand for an expert witness to probe board member Heap's

*Ward v. Chapman*, 19-12543

psyche, and his observation that Heap would be exposed to potential contempt and perjury charges by his testimony, *id*. at 660-61, are not arguments in support of building a record to demonstrate Petitioner's entitlement to relief.

Petitioner impugns the rest of the parole board and again provides only conjecture to support an improper motive for the board's actions. He describes board member King as "unbiased, impartial and professional" when he recommended Petitioner for parole in 2012 but alleges King has now been "corrupted and tainted by his peers to change his position into alignment with their own vindictive retaliation…" *Id*. at PageID.650. Board Chair Eagen cannot be believed, because he was "coached" (as were other board members) and is covering up to avoid "many years of harboring personal animus." *Id*. at 663. In general, Petitioner argues, the board acted as a result of "anger" and "untouchable ego." *Id*. at 659.

Nor does the rest of Petitioner's replies, exhibits, petition, and cited pleadings from his 2003 case provide the Court specific allegations to demonstrate Petitioner would be able to develop a record showing entitlement to relief. As reviewed above, Petitioner's affidavits detail numerous retaliatory actions by members of MDOC staff, *see* ECF No. 33-2, PageID.759-805, but do not make the link to any decisions of the parole

31

*Ward v. Chapman*, 19-12543

board. Petitioner does allege that individual MDOC staff members speculated that his continued litigation was the reason he had not been paroled. And a corrections officer stated that he had received a call from a parole board member who was very angry with Petitioner and that the officer should try to "curb" Petitioner's litigation. ECF No. 33-2, PageID.773. However, that single, attenuated attribution of wrongdoing to an unnamed board member does not demonstrate "good cause" sufficient to permit Rule 6 discovery.

Finally, Petitioner seeks discovery or an evidentiary hearing of all the board members who voted against parole, to determine whether they improperly considered the 1971 convictions. He questions the basis for their decision, and argues that without that access, "[w]e will never know" their motivation. ECF No. 40, PageID.1485. Again, this is insufficient to demonstrate entitlement to discovery.

### 2. Evidentiary hearing

Coupled with his requests for discovery, Petitioner seeks an evidentiary hearing to establish that the parole board was motivated by vindictive retaliation in denying him parole and that the 1971 convictions were improperly considered as well. However, a hearing would not

*Ward v. Chapman*, 19-12543

demonstrate he is entitled to federal habeas relief, because he has no due-process-protected liberty interest in parole.

Petitioner cites in support *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) (on direct appeal, defendants provided affidavits by a former director of an EEOC office stating his belief that a prosecution was instigated based on "revenge" and by an IRS employee that the underlying tax prosecution was anomalous); and *Kimberlin v. White*, 7 F.3d 527, 531–32 (6th Cir. 1993) (declining to apply the presumption of vindictiveness resulting from the imposition of a higher-than-original sentence after a new trial of *North Carolina v. Pearce*, 395 U.S. 711 (1969), to the parole context). Neither supports his argument that he is entitled to an evidentiary hearing in the habeas context. In addition, the abundant record Petitioner has placed before the Court, discussed above, is adequate for it to rule without a hearing.

### H. Parole Board decisions subject to habeas challenge

Petitioner also charges the Court with error in how it limited the scope of Parole Board's decisions under habeas scrutiny in this petition. The Court determined the petition addressed the board's April 2017 finding of no interest and its recommendation against commutation in November 2018. Petitioner asserts that his petition challenges the board's actions from its

*Ward v. Chapman*, 19-12543

2006 parole revocation through to a 2019 recommendation against clemency. Petitioner argued this issue in his previous motion for reconsideration, ECF No. 27, and the Court addressed it in its June 22, 2020 Order. ECF No. 30. However, its ruling in part was based on the "no reasonable basis" standard for AEDPA deference of *Harrington v. Richter*, 562 U.S. 86, 98 (2011), which the Court has acknowledged was error.

As discussed *supra* in reference to the 1971 convictions, the Sixth Circuit held that they played no role in his 2006 parole revocation. *See Ward v. Wolfenbarger*, 342 F. App'x at 137. Petitioner cannot with this petition reopen the question of the board's motivation for its revocation decision over ten years after the Sixth Circuit upheld it.

Following the 2009 Sixth Circuit decision, a different court within this district ruled on Petitioner's challenge to "his continued detention on drug charges that originated over 30 years ago[,]" referring to his 1981 conviction. *Ward v. Howes*, No. 08-13051, 2011 WL 4527786, at *1 (E.D. Mich. Sept. 29, 2011) (Lawson, J.). That court relied on the Sixth Circuit's holding above regarding the Parole Board's use of the 1971 convictions. *Id*. at *17 (citing *Ward*, 342 F. App'x at 137, 138). It also held that Petitioner had received all the process he was due in the Parole Board's 2006 revocation decision. *Id*.

34

*Ward v. Chapman*, 19-12543

at *13. Finally, the court held that his claim against the Parole Board failed because he has "no constitutional right to be released on parole." *Id*.

Because both district and circuit courts have addressed Petitioner's arguments about parole board decisions through 2011, these would be second or successive claims that must be dismissed. *In re Salem*, 631 F.3d 809, 811–12 (6th Cir. 2011) (citing 28 U.S.C. § 2244(b)(1)). As to the remainder of the parole board's decisions, for the reasons stated above, they do not entitle him to relief.

## I. Additional errors

In his 2008 petition, Petitioner did not raise an Eighth Amendment challenge to his life sentence as cruel and unusual punishment. Petitioner argues now that this Court improperly dismissed his third claim in his current petition, which raised that issue. However, claims not raised in a prior petition are also to be dismissed, under section 2244(b)(2), unless the petitioner relies on a new rule of constitutional law, a factual predicate that a diligent petitioner could not have discovered, or a claim of innocence. *Salem*, 631 F.3d at 812. None of those apply to Petitioner. His third claim was properly dismissed.

Next, but relatedly, Petitioner cites as error the Court's reference to 28 U.S. § 2254, asserting that his petition was brought pursuant to 28 U.S. §

*Ward v. Chapman*, 19-12543

2241. This distinction between sections 2241 and 2254 is not an error that entitles him to a different outcome. First, both statutes contain the same standard, that a habeas petition will only be entertained if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3), 2254(a).

The Sixth Circuit, in *Rittenberry v. Morgan*, 468 F.3d 331 (6th Cir. 2006), rejected its petitioner's theory that section 2241 provided a "separate avenue" for habeas corpus relief or an "independent ground for his claim." *Id*. at 335. *Rittenberry* acknowledged that section 2241's "general grant of habeas jurisdiction  . . . would, on its own, be more friendly to a habeas petitioner—particularly one who has previously filed a federal habeas petition." *Id*. at 333. But section 2254 "limits the grounds for habeas relief to people in custody pursuant to a state court judgment."[3] *Id.*

As a result, "regardless of the label on the statutory underpinning for the petition, habeas petitions of state prisoners are governed by 28 U.S.C. § 2254." *Byrd v. Bagley*, 37 F. App'x 94, 95 (6th Cir. 2002). Accordingly, "a

---

[3] In *Ward v. Howes*, No. 08-13051, 2011 WL 4527786 (E.D. Mich. Sept. 29, 2011), Petitioner received the same answer: that AEDPA and the requirements of section 2254 apply to him, "regardless of how the petitioner characterizes his petition." *Id*. at *8 (citing *Rittenberry*, 468 F.3d at 333).

*Ward v. Chapman*, 19-12543

state prisoner's § 2241 habeas petition must comply with the gatekeeping restrictions" of AEDPA. *In re Marsch*, 209 F. App'x 481, 482 (6th Cir. 2006). "Among these gatekeeping restrictions [is] the requirement[] that a prisoner. . . may not file a successive petition absent authorization from an appellate court, 28 U.S.C. 2244(b)." *Id*. at 483. Petitioner did not obtain such authorization for his Eighth Amendment claim.

Petitioner also charges the Court with error in the use of *res judicata* and *estoppel* to deny him relief. Res judicata "bars subsequent causes of action when a court of competent jurisdiction already has rendered a final decision on the merits involving the same parties and claims in a prior action." *Consolidation Coal Co. v. Maynes*, 739 F.3d 323, 327 (6th Cir. 2014) (citing *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir.1992)). Petitioner cites *Sanders v. United States*, 373 U.S. 1 (1963), which held that *res judicata* does not apply to habeas petitions.

More recent Supreme Court decisions, as well as Congressional actions, have resulted in the "adoption in habeas corpus of a 'qualified application of the doctrine of res judicata.'" *Schlup v. Delo*, 513 U.S. 298, 319 (1995) (citing *McCleskey v. Zant*, 499 U.S. 467, 486 (1991)). The Court's prior rulings have not misapplied *res judicata* to Petitioner's case.

*Ward v. Chapman*, 19-12543

## J. Petitioner's motion for conference

Petitioner filed a motion seeking a phone or video conference with the Court and opposing counsel. ECF No. 49. As the Court is denying Petitioner's motion for reconsideration, the case remains closed, and this motion will be denied.

## K. Petitioner's motion for reconsideration of bond

Petitioner's reply and motion for reconsideration on his request for bond assert that he has raised a substantial claim of law supporting his release. As the discussion above indicates, the Court does not agree. Petitioner has not provided a palpable error on which the Court was misled on this issue.

## L. Certificate of appealability, *in forma pauperis* status on appeal, and Petitioner's motion for appointment of appellate counsel

Obtaining a certificate of appealability requires "a substantial showing of the denial of a constitutional right, a demonstration that . . . reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880,

*Ward v. Chapman*, 19-12543

893 and n.4 (1983)). The Court will deny a certificate of appealability because Petitioner has not made such a showing.

However, because the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than that of certificates of appealability, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764-65 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal.

When "the interests of justice so require," district courts may, in their discretion, appoint counsel for an indigent prisoner "seeking relief under section 2241, 2254, or 2255 of title 28" through a habeas petition. 18 U.S.C. § 3006A(a)(2)(B). In determining whether appointment of counsel is warranted, district courts should consider, among other factors, "the viability or frivolity of the [petitioner's] claims, the nature and complexity of the case, and the indigent's ability to present the case." *Sellers v. United States*, 316

*Ward v. Chapman*, 19-12543

F. Supp. 2d 516, 522 (E.D. Mich. 2004) (citations omitted). The issues are not complex, and Petitioner has demonstrated his ability to advance his legal claims. The motion for appointment of appellate counsel will be denied.

### IV.    Conclusion and Order

For the reasons stated above, it is **HEREBY ORDERED that**

1. Petitioner's motions for reconsideration and relief from judgment (ECF Nos. 40, 41) are **DENIED**;

2. Petitioner's motions to supplement authority (ECF Nos. 46, 48) are **GRANTED**;

3. Petitioner's motion for an extension to his deadline to submit a motion for a certificate of appealability (ECF No. 43) is **DENIED**;

4. Petitioner's motion for a conference (ECF No. 49) and for appointment of appellate counsel (ECF No. 50) are **DENIED**;

5. A certificate of appealability is **DENIED**.

Petitioner may raise his appeal *in forma pauperis*. All future pleadings on this matter should be directed to the Sixth Circuit Court of Appeals.

**IT IS SO ORDERED.**

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: August 31, 2020